UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL KENNETH HADDEN,<br><br>    Plaintiff,<br><br>         v.<br><br>A. ADAMS, et al.,<br><br>    Defendants. | Case No. 16-CV-02686 LHK (PR)<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. No. 64 |

Plaintiff, a California prisoner proceeding *pro se*, has filed a civil rights complaint, pursuant to 42 U.S.C. § 1983. In the complaint, plaintiff alleges that defendants Dr. Gamboa, Dr. E. Sullivan, Dr. M. Danial, and Dr. K. Kumar were deliberately indifferent to his serious medical needs by failing to provide appropriate medications and pain relief to plaintiff, and defendants Chief Medical Officer ("CMO") M. Sepulveda, Chief Executive Officer ("CEO") G. Ellis, California Correctional Health Care Services ("CCHSC") Chief L.D. Zamora, Chief Medical Executive Officer ("CMEO") A. Adams, and Chief Primary Health Care Provider D. Bright were deliberately indifferent to plaintiff's serious medical needs for denying plaintiff's administrative grievances regarding plaintiff's medical treatment. All defendants have filed a motion for

Case No. 16-CV-02686 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1

summary judgment. Plaintiff has filed an opposition, and defendants have filed a reply. For the reasons stated below, defendants' motion for summary judgment is GRANTED.

**BACKGROUND**

The following facts are undisputed unless otherwise indicated.

Plaintiff has been diagnosed with degenerative disk disease, osteoarthritis, and Chronic Pain Syndrome ("CPS"). Dkt. No. 64-2 ("Bright Decl.") ¶ 8.

I. Chronic pain and CPS

Chronic pain and Chronic Pain Syndrome are two different things. Chronic pain is defined as "pain that is present for more than 30 days and may have been elicited by an injury or illness, but may be perpetuated by factors that are remote and unrelated to the original source of pain." Dkt. No. 64-8 ("Sullivan Decl.") ¶ 6. Depending on the condition causing the chronic pain and depending on the patient, chronic pain can be treated with medication or non-medication, such as strengthening exercises. *Id.*

On the other hand, CPS, or Overwhelming Chronic Pain Syndrome, is "an enigmatic pain presentation where the presence or absence of an identifiable abnormality has little bearing on how the patient experiences pain, suffering, or disability." *Id.* ¶ 7. CPS often does not respond to conventional pain treatments. *Id.*

The treatment of chronic pain and CPS is varied. Narcotic pain medications may be useful but may also sometimes be ineffective. Sullivan Decl. ¶ 8; Bright Decl. ¶ 11. Prescribing opiods carries risks, however, such as addiction, abuse, and other adverse side effects. Sullivan Decl. ¶ 8; Bright Decl. ¶ 14. Adjuvant medications, which enhance the effects of pain medications, such as Methocarbamol and Fluoxetine, are also sometimes used to treat chronic pain and CPS. Sullivan Decl. ¶ 8. To minimize adverse effects of narcotic pain medications, narcotic pain medications are sometimes tapered, rotated, or discontinued. *Id.*

Case No. 16-CV-02686 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

2

In sum, appropriate treatment regimens for chronic pain and CPS may be modified over time, and require periodic re-evaluation as to effectiveness, benefits, and risks. Sullivan Decl. ¶ 10. What is considered appropriate treatment depends on the individual patient and that patient's response to narcotic pain medication. Bright Decl. ¶ 14. Successful treatment of chronic pain and CPS does not equate to elimination of all pain. Sullivan Decl. ¶ 11. Many times, patients will still experience substantial pain. *Id.* An effective treatment regimen focuses on managing a patient's pain level so that he or she may continue their daily activities. *Id.*

II. California Prison Health Care Services ("CPHCS") Pain Management Guidelines ("PMG")

CPHCS PMG was developed by the CPHCS Pain Committee to create pain management guidelines in an effort to standardize the evaluation and treatment of pain within California's prison system. Dkt. No. 64-11 ("PMG") at 8. The PMG is a compilation of "previously published guidelines by the Institute for Clinical Systems Improvement, the Veterans Administration, the American Pain Society and the American Academy of Pain Medicine." *Id.* at 3. The purpose of the PMG is to provide prison doctors with a standardized framework to address the issue of pain in patients. *Id.* at 12.

The California Correctional Health Care Services website contains numerous care guides and guidelines to aid health care providers.[1] Sullivan Decl. ¶¶ 3-4.

The website contains a disclaimer about the care guides, including the PMG, which states:

> These care guides are not fixed protocols that must be followed, but are intended for consideration of health care professionals and providers. While they identify and describe generally recommended courses of intervention, they are not presented as a substitute for the advice of a physician or other knowledgeable health care professional or provider. Individual patients may require different treatments from those specified in a given care guide. Care guides are not entirely inclusive or exclusive of all methods of reasonable care that can obtain/produce the same results. These care guides do not establish either a standard of care, or the minimally adequate care which meets constitutional standards.

---

[1] Defendants list the California Correctional Health Care Services Care Guides website as https://cchcs.cs.gov/care-guides-guidelines/, however, the correct website address is https://cchcs.ca.gov/clinical-resources/.

Case No. 16-CV-02686 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

3

Sullivan Decl. ¶ 8.

III.   Plaintiff's medical treatment

On August 13, 2009, Dr. Danial became plaintiff's primary care physician. Dr. Danial continued plaintiff's pharmacological treatment for pain management. Compl. at 17. However, plaintiff states that Dr. Danial failed to follow the PMG's comments regarding multi-disciplinary care. *Id.* On the other hand, Dr. Danial provides information explaining that Dr. Danial saw plaintiff on different dates, and what happened on those dates. Dkt. No. 64-3 ("Danial Decl.") ¶¶ 10-20.

Plaintiff alleges that on December 14, 2009, Dr. Kumar discontinued plaintiff's pain management regimen without justifiable reason or a referral pursuant to the PMG. Compl. at 17. Dr. Kumar refutes that Dr. Kumar ever treated plaintiff or was even working at SVSP on that date. Dkt. No. 64-6 ("Kumar Decl.") ¶ 18.

On September 2, 2010, Dr. Sullivan became plaintiff's primary care physician, and continued the pharmacological treatment plaintiff had been receiving. Compl. at 14. Between September 2, 2010 and November 15, 2010, Dr. Sullivan adjusted plaintiff's pain medication four times but never told plaintiff why. *Id.* at 14-15. On November 15, 2010, Dr. Sullivan began to taper off plaintiff's medications except Ibuprofen. *Id.* Although Dr. Sullivan diagnosed plaintiff with "overwhelming chronic pain syndrome," or CPS, Dr. Sullivan did not follow the PMG for chronic pain. *Id.* at 14-15. Dr. Sullivan disputes plaintiff's assertions. Specifically, Dr. Sullivan states that he treated plaintiff for several months prior to September 2, 2010. Sullivan Decl. ¶ 17. Further, Dr. Sullivan explains why Dr. Sullivan chose to adjust plaintiff's treatment plan. *Id.* ¶¶ 17-23, 27-30.

On March 14, 2011, Dr. Gamboa, plaintiff's primary care physician, continued plaintiff's pharmacologic treatment. Compl. at 13. From March 14 through November 3, 2011, Dr. Gamboa

Case No. 16-CV-02686 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

4

tried multiple combinations of pain medications but did not include any additional treatments included in the PMG, thereby failing to try any multi-disciplinary care. *Id.*

Dr. Gamboa disputes plaintiff's assertions, stating that on March 11, 2011, Dr. Gamboa renewed plaintiff's Ibuprofen prescription, added Tylenol 3 with Codeine to plaintiff's regimen, and prescribed non-pharmalogical therapy of daily movement exercises and stretching. Gamboa Decl. ¶ 11. Dr. Gamboa did not refer plaintiff for a psychological assessment because it was not medically indicated. *Id.* Dr. Gamboa knew that plaintiff's psychological assessment and treatment was being handled by another doctor, and plaintiff was being prescribed Fluoxetine, which is used as an anti-depressant as well as an adjuvant. *Id.* Dr. Gamboa explains why Dr. Gamboa chose to adjust plaintiff's treatment plan. *Id.* ¶¶ 13-16, 29.

Plaintiff alleges that on November 3, 2011, Dr. Gamboa discontinued plaintiff's pain management regimen for plaintiff's degenerative disease. Compl. at 12. Dr. Gamboa only allowed plaintiff to have Ibuprofen, Metocarbamol, and Gabapentin, and ordered plaintiff to physical therapy. *Id.* Dr. Gamboa disputes plaintiff's assertions. Gamboa Decl. ¶¶ 21-27.

Plaintiff alleges that on December 1, 2011, Dr. Gamboa discontinued plaintiff's Chronic Pain Management medication of morphine sulfate, tramadol HCL, methadone HCL, Tylenol 3, Gabapentin, and 800 mg of Ibuprofen. Compl. at 9. Dr. Gamboa stated that Chief Primary Health Care Provider Bright, Dr. Gamboa's superior, ordered the cancellation of these medications. *Id.* at 10. Dr. Gamboa did not follow the PMG for treatment of chronic pain, despite knowing that plaintiff suffered from chronic pain. *Id.* at 12. Dr. Gamboa disputes these assertions. Gamboa Decl. ¶¶ 31-33.

Plaintiff alleges that when all four of his primary care physicians – Drs. Danial, Kumar, Gamboa, and Sullivan – tried and failed to treat plaintiff's chronic pain with pharmacological treatment, they discontinued all chronic pain management, conducted no further examinations of plaintiff's diseases and injuries, and would not conduct any further medical examinations. Compl.

Case No. 16-CV-02686 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

5

at 18-19. Plaintiff also alleges that defendants CMO Sepulveda, CEO Ellis, CCHCS Chief Zamora, CMEO Adams, and Chief Primary Health Care Provider Bright condoned the other defendants' actions by failing to remedy the violations through plaintiff's administrative grievances. *Id.* at 19-20.

## MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on the basis that plaintiff failed to exhaust his claims against them, that the claims are untimely, that defendants did not exhibit deliberate indifference, and that defendants are entitled to qualified immunity. The court views the facts in the light most favorable to plaintiff, the non-moving party. After reviewing the record and the submitted briefs, the court declines to address defendants' arguments regarding exhaustion, statute of limitations, and qualified immunity, and resolves the motion for summary judgment solely on the merits.

I. Standard of review

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue

Case No. 16-CV-02686 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

6

of material fact. *Id.* The burden then shifts to the nonmoving party to "go beyond the pleadings, and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *See id.* at 324 (internal quotations omitted).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

II. <u>Deliberate indifference to serious medical needs</u>

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104). A prison official is deliberately indifferent if he knows a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* Consequently, in order for deliberate indifference to be established, there

must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. *See McGuckin*, 974 F.2d at 1060.

A claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment. *Id.* at 1059. Nor does a difference of opinion between a prisoner-patient and prison medical authorities regarding proper treatment amount to deliberate indifference. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

III. Analysis

Defendants do not dispute that plaintiff's diagnosis of CPS or chronic pain is a serious medical need. Thus, the only question before this court is whether there is a genuine issue of material fact as to whether defendants exhibited deliberate indifference in treating plaintiff's pain.

A. Dr. Danial

Despite plaintiff's initial allegation that Dr. Danial deliberately failed to provide adequate medical care by failing to follow the PMG's multidisciplinary care treatment guidelines, Compl. at 5, 17, plaintiff clarifies in his opposition that while Dr. Danial did provide adequate pain management, Dr. Danial did not discover plaintiff's source of pain,[2] dkt. no. 72 ("Opp.") at 4. In addition, argues plaintiff, instead of diagnosing plaintiff's back/shoulder/neck injury, Dr. Danial just administered pain management, and that instead of getting an MRI or other advanced scanning, Dr. Danial only authorized an x-ray. Opp. at 4.

---

[2] The allegation that Dr. Danial failed to discover the source of plaintiff's pain is raised for the first time in plaintiff's opposition. This was not alleged in the complaint, and the court declines to allow plaintiff to amend the complaint at this stage in the litigation. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) ("A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations."); *Burrell v. Cty. of Santa Clara*, No. 11-CV-04569-LHK, 2013 WL 2156374, at *11 (N.D. Cal. May 17, 2013) (refusing to consider facts and causes of action raised for the first time in the opposition to a motion for summary judgment). Plaintiff provides no other information on how the failure to discover the source of plaintiff's pain demonstrates deliberate indifference in failing to treat or manage plaintiff's pain.

Case No. 16-CV-02686 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

8

According to Dr. Danial, Dr. Danial saw plaintiff in June and July 2009. Danial Decl. ¶¶ 7-8. At those appointments, Dr. Danial looked into plaintiff's complaints of shoulder and back pain. *Id.*; Dkt. No. 64-11 at 133. Dr. Danial ordered x-rays and provided non-pharmacologic therapy in the form of patient education. Danial Decl. ¶ 7; Dkt. No. 64-11 at 133, 135-36. In addition, Dr. Danial added Tramadol, a narcotic pain reliever, once plaintiff complained that the Ibuprofen was not working. Danial Decl. ¶ 8; Dkt. No. 64-11 at 136. On August 28, 2009, after plaintiff complained that the Tramadol was not working, Dr. Danial stopped the Tramadol and added Morphine Sulfate ER 15 mg for a trial period. Danial Decl. ¶ 10; Dkt. No. 64-11 at 140-41.

At a follow up appointment on September 16, 2009, Dr. Danial modified plaintiff's morphine dose to address plaintiff's complaint that while the medication was effective during the day, plaintiff's back pain returned at night. Danial Decl. ¶ 16. Dr. Danial renewed plaintiff's prescription for Ibuprofen and provided patient education on how the medications, smoking cessation, exercise, and diet could improve plaintiff's condition. *Id.*; Dkt. No. 64-11 at 142. On October 22, 2009, plaintiff told Dr. Danial that his neck and lower back pain were managed with the medication, but plaintiff also had shoulder pain. *Id.* ¶ 17. Dr. Danial increased plaintiff's morphine dose in the morning, and provided patient education. *Id.*; Dkt. No. 64-11 at 144.

A difference of opinion between a prisoner-patient and prison medical authorities regarding proper treatment does not amount to deliberate indifference. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference. *See Toguchi v. Chung*, 391 F.3d 1051, 1059-60 (9th Cir. 2004). In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to the plaintiff's health. *Id.* at 1058.

Case No. 16-CV-02686 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

9

Although plaintiff disagrees with Dr. Danial's treatment decisions, merely disagreeing with the doctor does not show a triable issue in support of plaintiff's claim that Dr. Danial was deliberately indifferent. Plaintiff was required to, but did not, produce evidence that would allow a reasonable jury to conclude that Dr. Danial's treatment decisions were medically unacceptable under the circumstances and chosen in conscious disregard of an excessive risk to plaintiff's health. *See id.* at 1058. Here, there is an absence of evidence in the record to show that Dr. Danial knew that his treatment choices were unreasonable. To the extent plaintiff wanted a "more advanced" screening of his neck or shoulder injury than the x-ray ordered by Dr. Danial, plaintiff was required to show that the x-ray ordered was medically unacceptable and that Dr. Danial chose to order the x-ray in conscious disregard of an excessive risk to plaintiff's health. Plaintiff has failed to do so.

In addition, plaintiff's complaint asserts that Dr. Danial failed to follow any of the PMG recommendations for multi-disciplinary care such as a psychological assessment, functional evaluation, patient education, or a referral to a pain specialist. Compl. at 17. Dr. Danial explains that the PMG is a set of guidelines, and not a mandatory treatment plan. Danial Decl. ¶¶ 11, 20. In addition, though patient education was not required, Dkt. No. 64-11 at 56-57, medical records show that Dr. Danial provided patient education regarding diet and exercise and alternatives to medication. *Id.* ¶ 13; Dkt. No. 64-11 at 140. Finally, Dr. Danial believed that the symptoms experienced by plaintiff fell within the normal range for treatment, and thus, Dr. Danial did not believe a referral to a pain specialist was medically necessary. Danial Decl. ¶ 14. Indeed, the PMG states that a provider may consider a referral to a specialist, but a referral is generally not indicated for medication management alone. Dkt. No. 64-11 at 66.

In sum, plaintiff has provided nothing to suggest that Dr. Danial's actions or inactions were medically unacceptable under the circumstances, or that his decisions were chosen in conscious disregard to plaintiff's health. Accordingly, Dr. Danial is entitled to summary judgment.

Case No. 16-CV-02686 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
10

B.  Dr. Kumar

Plaintiff asserts that Dr. Kumar discontinued plaintiff's pain management regimen on December 4 and December 14, 2009, and failed to refer plaintiff to a specialist. Compl. at 5, 17. On the other hand, defendants provide evidence showing that Dr. Kumar never treated plaintiff and was not even working at SVSP in December 2009. Kumar Decl. ¶ 18. In fact, Dr. Kumar was working at the California Men's Colony in December 2009. In plaintiff's opposition, plaintiff does not dispute that Dr. Kumar was not plaintiff's treating physician in December 2009. Opp. at 10-11.

Both Dr. Kumar and Dr. Danial state that according to the medical records, Dr. Danial treated plaintiff on December 4 and 14, 2009. Kumar Decl. ¶ 14; Danial Decl. ¶¶ 18-19. Further, the medical records show that in December 2009, Dr. Danial renewed plaintiff's prescriptions for Ibuprofen and Morphine Sulfate, and that Dr. Danial believed the medications were properly controlling plaintiff's pain at that time. Danial Decl. ¶¶ 19-20. Plaintiff does not dispute that his pain was under control in December 2009, nor does plaintiff provide any non-conclusory evidence that Dr. Kumar or Dr. Danial discontinued plaintiff's pain management. In addition to Dr. Kumar not serving as plaintiff's treating physician in December 2009, there is no evidence to suggest that Dr. Kumar was aware that plaintiff's pain was a substantial risk, nor is there evidence that Dr. Kumar disregarded that risk.

In short, plaintiff has provided nothing to suggest that Dr. Kumar's actions or inactions were medically unacceptable under the circumstances, or that his decisions were chosen in conscious disregard to plaintiff's health. Accordingly, Dr. Kumar, in his role as a treating physician, is entitled to summary judgment.

C.  Dr. Sullivan

According to plaintiff, from September through December 2010, Dr. Sullivan continued treating plaintiff's pain through medication, altered the prescriptions several times, and then began

Case No. 16-CV-02686 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

11

tapering plaintiff off the medication. Compl. at 14-15. Although plaintiff complained of debilitating pain, after two months of prescribing pain medications that did not work, Dr. Sullivan began decreasing the medications and did not implement any other PMG procedures. *Id.* at 16. Plaintiff alleges that Dr. Sullivan never utilized any procedural safeguards established in the PMG and never referred plaintiff for psychological assessment or treatment. *Id.* at 6. Plaintiff's opposition to the instant motion clarifies that while Dr. Sullivan was indeed trying to manage plaintiff's pain, Dr. Sullivan never tried to discover the source of plaintiff's pain to correct it.[3] Opp. at 5.

According to Dr. Sullivan, on September 2, 2010, Dr. Sullivan changed plaintiff's morphine prescription to Morphine Sulfate IR 15 mg, three times a day because plaintiff's pain complaints were ongoing. Sullivan Decl. ¶ 18. On September 28, 2010, because plaintiff still complained that his pain was uncontrollable, Dr. Sullivan believed the morphine had become ineffective, diagnosed plaintiff with chronic back pain, and concluded that methadone would be more appropriate. *Id.* ¶¶ 19-20; Dkt. No. 64-11 at 151. On October 26, 2010, plaintiff reported that the methadone was ineffective at treating the pain, and plaintiff requested morphine. Sullivan Decl. ¶ 21. Dr. Sullivan maintained plaintiff on methadone for further observation even though Dr. Sullivan was unsure whether plaintiff met the objective requirements for narcotics. *Id.* ¶¶ 22, 27.

---

[3] The allegation that Dr. Sullivan failed to discover the source of plaintiff's pain is raised for the first time in plaintiff's opposition. This was not alleged in the complaint, and the court declines to allow plaintiff to amend the complaint at this stage in the litigation. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) ("A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations."); *Burrell v. Cty. of Santa Clara*, No. 11-CV-04569-LHK, 2013 WL 2156374, at *11 (N.D. Cal. May 17, 2013) (refusing to consider facts and causes of action raised for the first time in the opposition to a motion for summary judgment). Plaintiff provides no other information on how the failure to discover the source of plaintiff's pain demonstrates deliberate indifference in failing to treat or manage plaintiff's pain.

Case No. 16-CV-02686 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

12

On November 15, 2010, when plaintiff reported that the increased dosage of methadone was ineffective, Dr. Sullivan noted that plaintiff denied having weakness or pain in his extremities, and was able to move his lower back without evidence of discomfort. *Id.* ¶ 27. Dr. Sullivan found plaintiff's physical presentation to be incompatible with plaintiff's reported symptoms, and believed that plaintiff's pain complaints stemmed from narcotics abuse or dependency. *Id.* At that point, Dr. Sullivan tapered plaintiff's methadone prescription to minimize the chance that plaintiff would experience withdrawal symptoms from the methadone. *Id.* ¶ 28. Dr. Sullivan also ordered new x-rays of plaintiff's back. *Id.* On December 30, 2010, Dr. Sullivan saw plaintiff again when he had been weaned off the narcotic medication. *Id.* ¶ 29. Plaintiff still complained about lower back pain, but demonstrated normal levels of strength and was able to move without evidence of pain. *Id.*

Plaintiff concedes that Dr. Sullivan attempted to manage plaintiff's pain, but argues that Dr. Sullivan should have focused more on discovering the source of plaintiff's pain. Opp. at 5. However, the evidence described above shows that Dr. Sullivan was aware of plaintiff's pain and took reasonable steps to abate it. *See Farmer*, 511 U.S. at 837. There is an absence of evidence that Dr. Sullivan disregarded plaintiff's plain, or that Dr. Sullivan's actions were unreasonable. *See id.* Plaintiff has not provided any evidence to suggest that Dr. Sullivan's choices of treatment were medically inappropriate or taken with conscious disregard of an excessive risk to plaintiff. Without such evidence, there is no triable issue of fact as to whether Dr. Sullivan was deliberately indifferent in his treatment of plaintiff's pain.

Plaintiff suggests that Dr. Sullivan ignored the PMG's recommendation to try other methods of treatment, but Dr. Sullivan points out that another doctor had prescribed plaintiff Prozac, which is both an anti-depressant and an adjuvant. Sullivan Decl. ¶ 25. In addition, the PMG provides for psychological needs to be handled by a different doctor from the primary care doctor. *Id.* ¶ 26; Dkt. No. 64-11 at 52. Finally, as stated previously, the PMG is a set of

Case No. 16-CV-02686 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

13

guidelines rather than a mandatory treatment plan. Plaintiff does not provide any evidence to suggest that the failure to utilize other PMG recommendations was medically unacceptable in plaintiff's situation. Although plaintiff may not agree with Dr. Sullivan's choices, plaintiff does not provide evidence to suggest that Dr. Sullivan's treatment decisions were medically unacceptable under the circumstances and chosen in conscious disregard of an excessive risk to plaintiff's health. *See Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004).

Accordingly, Dr. Sullivan is entitled to summary judgment.

D. Dr. Gamboa

Plaintiff alleges that from March 14 through November 3, 2011, Dr. Gamboa prescribed several combinations of pain medications in an attempt to find an adequate pain management regimen for plaintiff. Compl. at 13. Plaintiff argues that Dr. Gamboa failed to utilize all other PMG options, such as referral to a pain specialist, a primary care pain champion, etc., and instead permitted plaintiff to continue suffering chronic pain. *Id.* at 13-14. Plaintiff alleges that Dr. Gamboa relied only on pharmacologic therapy to try to manage plaintiff's pain and failed to follow the PMG. *Id.* 12-13. Plaintiff states that on November 3, 2011, Dr. Gamboa discontinued plaintiff's pain management regimen, allowing only Ibuprofen, Methocarbamol, Gabapentin, and ordered physical therapy. *Id.* at 12. As a result, plaintiff has been experiencing daily moderate to severe debilitating pain. *Id.* On December 1, 2011, Dr. Gamboa removed plaintiff from "an adequate varied chronic pain management regimen." *Id.* at 9. Plaintiff ultimately states that Dr. Gamboa was deliberately indifferent to plaintiff's medical needs by using narcotic treatment to manage plaintiff's pain rather than treating the actual source of plaintiff's pain.[4] Opp. at 5.

---

[4] The allegation that Dr. Gamboa failed to discover the source of plaintiff's pain is raised for the first time in plaintiff's opposition. This was not alleged in the complaint, and the court declines to allow plaintiff to amend the complaint at this stage in the litigation. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1292 (9th Cir. 2000) ("A complaint guides the parties' discovery, putting the defendant on notice of the evidence it needs to adduce in order to defend against the plaintiff's allegations."); *Burrell v. Cty. of Santa Clara*, No. 11-CV-04569-LHK, 2013 WL 2156374, at *11

Plaintiff further argues that Dr. Gamboa administered pharmacological treatment in lieu of more expensive treatment options such as surgery or providing an MRI or CT scan. *Id.*

Dr. Gamboa states that in March 2011, when he saw plaintiff, plaintiff was complaining of pain when waking in the morning. Gamboa Decl. ¶ 10. Dr. Gamboa recognized that plaintiff had a history of chronic neck and lower back pain, as well as osteoarthritis. *Id.* Dr. Gamboa renewed plaintiff's Ibuprofen prescription, added Tylenol 3 with Codeine, and prescribed non-pharmacologic therapy of movement exercises and stretching, as well as patient education. *Id.* ¶ 11; Dkt. No. 64-11 at 163. Plaintiff's psychological assessment and treatment were being handled by a different doctor, and plaintiff had been placed on an antidepressant, which also worked as an adjuvant for pain medication, so Dr. Gamboa believed an additional referral for psychological assessment was unnecessary. Gamboa Decl. ¶ 12. Dr. Gamboa did not believe other options of the PMG were medically necessary at that time. *Id.*

On April 18, 2011, after plaintiff complained that the Tylenol 3 was ineffective, Dr. Gamboa stopped the Tylenol 3 prescription and prescribed Morphine IR. *Id.* ¶ 13; Dkt. No. 64-11 at 167. Although plaintiff had previously received Methadone for pain, Dr. Gamboa believed that Methadone was contraindicated. Gamboa Decl. ¶ 13; Dkt. No. 64-11 at 167. On May 23, 2011, plaintiff told Dr. Gamboa that the Morphine IR was ineffective and that plaintiff was experiencing neck, shoulder, and lower back pain. Gamboa Decl. ¶ 14. Based on these symptoms, Dr. Gamboa diagnosed plaintiff with CPS. *Id.*; Dkt. No. 64-11 at 173. In response, Dr. Gamboa changed plaintiff's Morphine IR prescription to Morphine SR because that had previously been effective. Gamboa Decl. ¶ 15. Plaintiff's psychological needs were being treated by another doctor. *Id.*

---

(N.D. Cal. May 17, 2013) (refusing to consider facts and causes of action raised for the first time in the opposition to a motion for summary judgment). Plaintiff provides no other information on how the failure to discover the source of plaintiff's pain demonstrates deliberate indifference in failing to treat or manage plaintiff's pain.

Case No. 16-CV-02686 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

15

On August 3, 2011, plaintiff informed Dr. Gamboa that the Morphine SR was effective at treating pain at night, but plaintiff was still experiencing pain during the day. *Id.* ¶ 16. Dr. Gamboa increased plaintiff's prescription for Morphine SR, renewed the Ibuprofen prescription, and ordered a follow-up x-ray to assess the extent of plaintiff's osteoarthritic degeneration in plaintiff's back. *Id.*; Dkt. No. 64-11 at 176.

On November 1, 2011, after plaintiff's morphine prescription ran out, plaintiff requested a renewal. *Id.* ¶ 21. Dr. Gamboa reviewed Chief Primary Health Care Provider Bright's August 2011 recommendation to wean plaintiff off narcotics because plaintiff was not showing objective evidence of severe disease, and without that evidence, the potential benefits of narcotics did not outweigh the risks. *Id.* ¶¶ 19, 21. Dr. Gamboa ultimately agreed, and recognized that the PMG also recommended against the use of opiods to treat chronic pain unless there was evidence of severe disease. *Id.* ¶ 22. As a result, Dr. Gamboa prescribed a tapering of Morphine. *Id.* ¶ 23.

Plaintiff argues that on November 3, 2011, Dr. Gamboa only allowed Ibuprofen, Methocarbamol, Gabapentin, and ordered physical therapy. Compl. at 12. However, the medical records indicate that plaintiff was also taking Venlafaxine, which is an adjuvant for pain medication. Gamboa Decl. ¶ 24; Dkt. No. 64-11 at 185. Plaintiff further states that Methocarbamol was ineffective and rarely useful for chronic pain. Compl. at 12. However, according to the PMG, Methocarbamol can be medically appropriate as an adjuvant for chronic pain when the pain is related to a muscle spasm. Gamboa Decl. ¶ 26; Dkt. No. 64-11 at 10.. Nonetheless, plaintiff was not taking Methocarbamol on November 3, 2011. Gamboa Decl. ¶ 26.

As previously stated, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference. *Toguchi*, 391 F.3d at 1058. In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course

Case No. 16-CV-02686 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

16

of treatment the doctors chose was medically unacceptable under the circumstances and that he or she chose this course in conscious disregard of an excessive risk to plaintiff's health. *Id.*

The record shows that at each appointment and follow-up, Dr. Gamboa assessed plaintiff's condition. In March 2011, based on plaintiff's medical history of chronic neck and lower back pain secondary to osteoarthritis, Dr. Sullivan adjusted plaintiff's pain medication depending on plaintiff's report of effectiveness and provided patient education. Gamboa Decl. ¶ 11, 13. In May 2011, Dr. Gamboa diagnosed plaintiff with CPS and adjusted plaintiff's medications to manage the pain. *Id.* ¶¶ 14-19, 21, 23-24, 32. Plaintiff has not shown that Dr. Gamboa's choice of treatment was medically unacceptable under the circumstances. Although plaintiff suggests that Dr. Gamboa failed to utilize all the PMG's options for treatment, plaintiff does not provide evidence that any of the PMG options not followed by Dr. Gamboa were medically necessary or that Dr. Gamboa's failure to utilize those options were choices taken with conscious disregard of an excessive risk to plaintiff's health.

Accordingly, Dr. Gamboa is entitled to summary judgment.

E. Supervisory defendants

The remaining defendants are supervisory defendants. Plaintiff alleges that Dr. Kumar, CMO Sepulveda, CEO Ellis, CCHCS Chief Zamora, CMEO Adams, and Chief Primary Health Care Provider Bright all denied plaintiff's administrative grievances related to plaintiff's chronic pain management and improperly agreed with Drs. Danial, Sullivan, and Gamboa's treatment decisions. Compl. at 19.

If alleged constitutional violations are ongoing, a prison official reviewing inmate grievances may be liable because he or she knew of an "ongoing constitutional violation and . . . had the authority and opportunity to prevent the ongoing violation." *Herrera v. Hall*, Case No. 1:08-cv-01882–LJO–SKO PC, 2010 WL 2791586, at *4 (E.D. Cal. July 14, 2010) (citing *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)).

Case No. 16-CV-02686 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

17

Where claims are asserted against administrators who supervise the provision of prison medical care, the question is not whether the administrator or supervisor was "directly involved" in the plaintiff's diagnosis, but whether the plaintiff has sufficiently alleged that the supervisor's knowing failure to address the treating provider's deficient care interfered with plaintiff's medical treatment. *See Gonzalez v. Ahmed*, 67 F. Supp. 3d 1145, 1156-57 (N.D. Cal. 2014) (where supervisors knew doctor had denied plaintiff medical care but nonetheless ordered plaintiff to return to that doctor's care).

Here, plaintiff argues that these supervisory defendants were deliberately indifferent by failing to correct Drs. Danial, Sullivan, and Gamboa's treatment choices. The only allegations against supervisory defendants Dr. Kumar, CMO Sepulveda, CEO Ellis, CCHCS Chief Zamora, CMEO Adams, and Chief Primary Health Care Provider Bright concern their denials of plaintiff's inmate grievances regarding the medical care plaintiff received from Drs. Danial, Sullivan, and Gamboa for plaintiff's chronic pain. As there is an absence of evidence that Drs. Danial, Sullivan, and Gamboa provided constitutionally deficient care, any conduct upholding Drs. Danial, Sullivan, and Gamboa's decisions is not a constitutional violation.

Accordingly, supervisory defendants Dr. Kumar, CMO Sepulveda, CEO Ellis, CCHSC Chief Zamora, CMEO Adams, and Chief Primary Health Care Provider Bright are entitled to summary judgment.

## CONCLUSION

Defendants' motion for summary judgment is GRANTED. The Clerk shall terminate all pending motions and close the file.

**IT IS SO ORDERED.**

DATED: December 7, 2018

*Lucy H. Koh*
LUCY H. KOH
UNITED STATES DISTRICT JUDGE

Case No. 16-CV-02686 LHK (PR)
ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

18